STATE, THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, PROSECUTORS, v. THE PATER-SON AVENUE AND SECAUCUS ROAD COMMISSIONERS.

STATE, HAGEN, PROSECUTOR, v. THE SAME.

1. The legislature has the power to put upon a municipal corporation a portion or the whole of the expenses of a public improvement within its limits, either before it is undertaken or after its completion.
2. An act directing an assessment for public improvements upon all lands and real estate which, " in the opinion of the commissioners, or a majority of them, shall be benefited, in proportion to the benefit received," is valid.
3. The legislature may limit the area of assessment for a public improve-ment; it need not include the whole territory benefited by the im-provement; provided that the assessment upon such lands as are within the prescribed limits is restricted to the amount of benefit re-ceived by them.
4. It is essential to the validity of an assessment for benefits that the land owners have notice, legal or constructive, of the meeting of the com-missioners by whom the assessment is made, and an opportunity of being heard before them. It is not sufficient that they have notice of the hearing before the court on an application for the confirmation of the report of the commissioners.

On *certiorari*. In matter of the improvement of Paterson avenue and the Secaucus road, in the county of Hudson.

Argued at November Term, 1878, before Justices DAL-RIMPLE, DEPUE and SCUDDER.

For the prosecutors, *J. H. Lippincott* and *J. Flemming*.

For the defendants, *J. D. Bedle*.

The opinion of the court was delivered by

DEPUE, J. By the act of 1869 three commissioners were appointed to regulate, grade, open, widen, flag, curb, gutter, pave and repair Paterson avenue, from the westerly line of the Paterson plank road westerly to the Secaucus road, and

the Secaucus road from Paterson avenue to Pen Horne creek, in the county of Hudson. *Pamph. L.*, 1869, *p.* 1080. Section ten provided for assessments for benefits, to be made by the commissioners, to be reported to and confirmed by the Court of Common Pleas of the county of Hudson. Section eleven provided that if the court, after considering all objections presented in writing, should refuse to confirm said assessments, it should appoint three disinterested commissioners to make a new assessment, to be likewise reported to and confirmed by the court. By the act of 1870, the said commissioners, in addition to the duties enjoined by the act of 1869, were empowered, upon the application in writing to them by the owners of a majority of the property "fronting on said proposed improvement," to regulate and grade the old Secaucus road, having first widened the same from Pen Horne creek to the Paterson plank road, and also to widen, grade and regulate the old county road, and extend the same to the old Secaucus road; and the act of 1869 was declared to be construed as if the improvements authorized by the act of 1870 had been included in the first-named act. *Pamph. L.*, 1870, *p.* 809. Supplements were passed in 1871, (*Pamph. L.*, *p.* 997;) 1872, (*Pamph. L.*, *p.* 794;) 1874, (*Pamph. L.*, *p.* 488;) and in 1875, (*Pamph. L.*, *p.* 519,) further increasing and modifying the powers and duties of the commissioners, and prescribing the manner in which their duties were to be performed.

The roads on which these improvements were authorized were all in the county of Hudson, and lay in Hudson City and the townships of North Bergen and West Hoboken, and extended in all a distance of about one and a quarter miles. The improvement was begun in 1871, and completed in June, 1874, at a total cost of $131,968.79, of which the sum of $37,442.74 was for incidental expenses, such as engineering, commissioners' fees and expenses, printing, interest, &c. The item for interest alone amounted to $25,451.68.

The final assessment was made by commissioners appointed by the Court of Common Pleas, by virtue of the first section of the act of 1874. Of the entire cost of the improvement,

they assessed, on lands benefited, the sum of $73,107.68, and the residue, amounting to $58,861.11, upon the county of Hudson, in compliance with the first section of the act of 1875. Their report was filed in the clerk's office of the Court of Common Pleas, on the 23d day of May, 1877, and, after objections were heard, was confirmed March 16th, 1878. Writs of *certiorari*, seventeen in all, were sued out, in March, 1878, to remove these proceedings. One of these writs was obtained by the board of chosen freeholders of the county of Hudson, and the others by individuals upon whose lands parts of the assessments were laid.

Among the reasons assigned for reversal are many which relate to the form of the oath taken by the original commissioners, and irregularities in their proceeding, especially in the letting of the contracts for the work. These objections cannot now be entertained : they have been removed by legislation, especially by the act of 1874, and are such as are capable of being cured by subsequent legislation. *State, Walter, pros.,* v. *Town of Union,* 4 *Vroom* 350. If they had not been cured by after-legislation, these objections come too late.: the work was completed, and all the expenses incurred in the early part of 1874, and the writs of *certiorari* were not issued until March, 1878. The excuse for this delay—that proceedings on the report of the commissioners were pending in the Court of Common Pleas until a few days before the writs were allowed—is insufficient. The duty of that court was limited to the examination and consideration of the assessments made by the commissioners appointed by it. It had no jurisdiction to revise and vacate the earlier proceedings in making the improvement, except so far as they were involved in the propriety and legality of the assessments made by the new commissioners. The objections were such as, if well founded, could have been made available on *certiorari* in an early stage of the work, and it is the policy of the law to require such objections to be taken before the expenses of the improvement have been incurred. It is too late to bring them forward now.

The commissioners by whom the assessment for the cost

and expenses of the improvement was made, were appointed by the court in May, 1874, under a special authority given by the first section of the act of 1874, and the only reasons that can now be considered are such as relate to the assessments made by these commissioners, and to their proceedings in making them.

The *certiorari* of the board of chosen freeholders of the county of Hudson puts in issue the power of the commissioners to lay any portion of the cost of the improvement on the county. Their action in this respect is in conformity with the directions of the act of 1875, which authorized the commissioners to determine what amount should be paid by the county, if, in their opinion, any part of the expenses should be assessed upon and paid by the county, or the townships or cities, in which the highways improved were situate. Their report shows that they assessed all the lands and real estate benefited, over which they were authorized to extend their assessments, and they determined the deficiency unprovided for, to be paid by the county and to be raised by general taxation. If their action is illegal, its illegality must result from the inability of the legislature to impose a burden of this character on the county. The improvement was plainly an enterprise prosecuted upon the idea that it was a county affair. The roads improved extended into three of the local subdivisions of the county. By the act of 1870 the county was authorized to advance the money necessary to execute the work, and to issue bonds to provide means therefor. The commissioners were required to enter into bonds to the county for the faithful performance of official duties, and the county collector was made the treasurer of the commissioners. By the same act the commissioners were empowered to issue certificates of indebtedness, which, by the act of 1872, the county collector, under certain restrictions, was authorized to countersign, and thereupon such certificates became obligatory on the county.

If the liability of the county for the deficiency did not arise from its relations to the proposed improvement, it was clearly imposed by the act of 1875. The power of the legislature to

lay upon a municipal corporation a portion, or the whole, of the expenses of a public improvement within its limits, either before it is undertaken or after its completion, is well settled. Speaking on this subject, Beasley, C. J., says: "I can have no doubt that the legislature could formally have declared that certain roads to be made in a township should, contrary to the usual custom, be borne by the body of the township; and granting this power, it seems impossible to deny the right to transfer to such corporation the burthen of paying for roads which may have been theretofore made in a particular district in such township." *Rader* v. *Township of Union,* 10 *Vroom* 509. The legislation on which the case cited was decided, and in which the liability of the whole township for the expenses of improvements incurred under a special law for the benefit of one locality was upheld, was similar to that now before the court. And the legislature may also appoint such methods for the ascertainment of the expenses to be paid by the municipality, or the apportionment of the part to be defrayed by it, as in legislative discretion may be deemed advisable. *Cleveland* v. *Board of Finance,* 9 *Vroom* 259. The sixteenth section of the general road act is a familiar instance of the exercise of such power.

If the proceedings were regular in other respects, and as regards the other prosecutors, they could not be vacated on these grounds.

Of the objections made by the other prosecutors, two only are material.

*First.* That the legislation under which the assessments were made does not provide a constitutional method of assessment.

The act of 1869 requires the costs and expenses "to be assessed upon and paid by the lands and real estate benefited in proportion to benefits received." The act of 1874 provides for the assessment of the costs, charges and expenses upon "all the lands and real estate which, in the opinion of the commissioners or a majority of them, shall be benefited, * * * in proportion to the benefit received." This legislative scheme

is perfect. *Village of Passaic* v. *State*, 8 *Vroom* 538. If it were not, it is made so in the strictest sense by the third section of the act of 1875, which expressly prohibits an assessment on any lot or parcel of land in excess of the amount the same is benefited. The argument that the addition of the words " in the opinion of the commissioners," to the designation of the lands to be assessed, avoids the whole provision, as being a delegation of legislative power, is too technical to be sound. In every case where the area of assessment is unlimited, or is restricted to prescribed limits, the lands upon which the burden may lawfully be laid must necessarily be ascertained by the judgment or opinion of commissioners; otherwise, the mode of assessment would be invalid within the principle of the Agens case.

But by the eighth section of the act of 1871, lands north of a designated line were exempted from liability to assessment. This exemption was retained in the proviso in the first section of the act of 1874; and by the third section of the act of 1875 the commissioners were forbidden to assess any part of the benefits accruing to such exempted lands on the lands liable to assessment. Those benefits were to go to swell the deficiency to be paid by the county, and there the commissioners, by their report, placed them.

This limitation of the area of assessment, though it enures to the advantage of those who justly should have been called upon to share the burden, is not illegal. The area of assessment is entirely within legislative discretion. It need not include the whole territory benefited by the improvement, if the assessment upon such lands as are within the prescribed limits is restricted (as in this case) to the amount of benefit received by those upon whom the expense may fall. *State, Graham, pros.,* v. *Paterson*, 8 *Vroom* 380; *Village of Passaic* v. *State, Id.* 538. The instances in which the action of commissioners has been set aside because it did not appear in their reports that they had considered all the lands benefited, are those in which the assessments were made under acts of the

legislature expressly distributing the burdens over all property beneficially affected.

*Second.* That the prosecutors had no notice, actual or constructive, of the hearing before the commissioners, and no opportunity to be heard before them. · This objection is true in fact; it was taken before the Court of Common Pleas, and therefore was not waived ; and, in my judgment, it is fatal to these proceedings. The owners of lands to be assessed for local improvements are entitled to notice of the meeting of the commissioners for assessing the expenses of the improvement, and have a right to be heard, even where the act authorizing the improvement is silent as to such notice. *State* v. *Jersey City*, 4 *Zab.* 662; *Vantilburgh* v. *Shann, Id.* 740; *State, Wilkinson, pros.,* v. *Trenton,* 7 *Vroom* 499. This requirement of the law which arises independent of any legislative provision for notice and opportunity to be heard, is designed in the interest of justice to afford to individuals who are called upon to bear these extraordinary burdens, an opportunity to be heard upon all questions of fact, as well as of law, on which their liability rests, and at a time and before the tribunal most favorable for the fair and unbiased determination of all such questions. It is not a compliance with this legal principle that the prosecutors had notice of the hearing before the court on the application for the confirmation of the report of the commissioners, and in fact appeared and presented their objections. The Court of Common Pleas is empowered to consider only such objections as are presented in writing. It is true the court may order the correction or alteration of such assessments in any particular. But nevertheless the action of the court is merely in review of the report of the commissioners, in which their judgment would necessarily be assumed to be correct until shown to be otherwise by testimony ; if, indeed, the court is called upon, on such a hearing, to determine questions of fact any further than is necessary to ascertain whether, in exercising their judgment, the commissioners departed from or violated legal principles. The opinion of a court upon the testimony of witnesses who are selected for the evidence they

will be disposed to give, is a poor substitute for the judgment of commissioners chosen for their peculiar fitness to perform such duties, and having opportunity to examine the grounds and acquaint themselves with all the circumstances which should influence their judgment.   Their report should not be set aside upon conflicting evidence, nor overcome as evidence merely, except on clear proof that it is erroneous.   *State, Pudney, pros.,* v. *Village of Passaic,* 8 *Vroom* 65 ; *State, Hunt, pros.,* v. *Rahway,* 10 *Vroom* 646 ; *S. C.,* 11 *Vroom* 615.   It is manifest that a hearing on such a review is not an equivalent for a hearing before the commissioners in the first instance.

This objection was taken before the Court of Common Pleas, and should have been sustained.   For this reason there must be a reversal.